UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MICHAEL HANNAGAN

              Plaintiff,

-against-

CIGNA HEALTHCARE, INC. and

RAYMOND JAMES FINANCIAL, INC. CAFETERIA PLAN

              Defendant,

------------------------------------------------------------X

**COMPLAINT**

Docket No. 15 CV 02299
(VSB)
(HP)

## I. PRELIMINARY STATEMENT

1. Plaintiff is Michael Hannagan ("Mr. Hannagan"), who was left a quadriplegic after a skiing accident on March 17, 2013 at Whiteface Mountain in Wilmington, New York. In this action, he seeks to compel the Defendants to cover the cost of air ambulance service that was medically necessary to transport him to a rehabilitation facility after his accident. CIGNA denied coverage on the ground that Mr. Hannagan used an out-of-network air ambulance provider. However, by erroneously denying the request for pre-approval of services, CIGNA made it impossible for Plaintiff to use an in-network provider. Plaintiff contends that Defendants' actions violate the provisions of ERISA requiring employer health plans to provide benefits set forth in the employee's health insurance plan, which in this instance provides for coverage in emergency and urgent situations such as occurred here, and also includes coverage

for air ambulance services. Plaintiff also contends that the Defendant CIGNA violated ERISA by not providing a full and fair review by failing to consider all relevant factors and providing confusing and inconsistent notifications of the basis of the denial of his claim. Mr. Hannagan seeks to compel the Defendants to reevaluate his claim. He also seeks damages to cover the cost of air ambulance service he required.

## II. JURISDICTION AND VENUE

2. Jurisdiction over this action is conferred upon this Court by 29 U.S.C. § 1132(e)(1) because this action is brought pursuant to the Civil Enforcement Provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq. This Court also has jurisdiction under 28 U.S.C. § 1331, given that the causes of action arise under federal common law.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1132(e)(2) in that it is the judicial district where the plan is administered and where all Defendants have offices.

## III. PARTIES

4. Plaintiff MICHAEL HANNAGAN now resides in Thousand Oaks, California. At the time of his accident, he was 44 years old and resided in New York, New York where he was employed by Raymond James and Associates in their New York City office.

5. Defendant CIGNA HEALTHCARE, INC., headquartered in Bloomfield, Connecticut, with offices in New York City, is a global health insurance company that was Mr. Hannagan's health insurance company at the time of the accident. Mr. Hannagan had health insurance through CIGNA at all relevant times.

6. Defendant CIGNA HEALTHCARE, INC. has the discretionary authority to interpret and apply plan terms and to make determinations in connection with its review of claims under the plan.

7. Defendant CIGNA HEALTHCARE, INC. is an ERISA fiduciary for the ERISA health plan at issue. As such, CIGNA owes the Plaintiff the duty of care and loyalty, and it must apply its plan provisions in good faith.

8. Defendant RAYMOND JAMES FINANCIAL INC. CAFETERIA PLAN was Mr. Hannagan's healthcare benefit plan at all relevant times herein.

## IV. APPLICABLE STATUTES AND REGULATIONS

9. The Employee Retirement Income Security Act of 1974 (ERISA) (Pub.L. 93–406, 88 Stat. 829, enacted September 2, 1974, codified in part at 29 U.S.C. ch. 18) is a federal law that establishes minimum standards for pension plans and employment benefit plans, including health insurance plans.

10. ERISA was enacted to protect the interests of employee benefit plan participants and their beneficiaries by requiring the disclosure of financial and other information concerning the plan to beneficiaries, establishing standards of conduct for plan fiduciaries and providing for access to the federal courts and appropriate remedies.

11. ERISA requires that employee health plans provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plans has been denied, setting forth specific reasons for such denial, written in a manner calculated to be understood by the participant and accord its members an opportunity of full and fair review. 29 U.S.C. §1133.

12. Under ERISA, a participant such as Mr. Hannagan may bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. §1132(a)(1)(B).

13. Participants are also entitled to obtain appropriate equitable relief to redress such violation or to enforce any provisions of ERISA or the terms of the plan. 29 U.S.C. §1132(a)(3).

## V. FACTS

14. On March 17, 2013, Mr. Hannagan was severely injured in a ski accident and was left paralyzed. He was 44 years old at the time of the accident.

15. Immediately after the accident, he was air lifted to the nearest trauma center, Fletcher Allen Hospital in Burlington, Vermont, where he was diagnosed with severe spinal cord injury.

16. At Fletcher Allen, Mr. Hannagan was put into a medically induced coma and underwent emergency surgery.

17. Mr. Hannagan's insurance coverage at all relevant times was provided by CIGNA, specifically the Raymond James Financial, Inc. Cafeteria Plan through his employment with Raymond James & Associates, Inc.

18. The Plan, Raymond James Financial Inc. Cafeteria Plan, is an employee benefits plan within the meaning of 29 U.S.C. §1002(3) and 29 U.S.C. §1140. Plaintiff is entitled to the rights and benefits under the Plan, as administered by CIGNA.

19. At all relevant times, CIGNA was and continues to be a "fiduciary" within the meaning of 29 U.S.C. §1002(21), as it exercises discretionary authority and/or discretionary responsibility in the administration of such plan.

20. The plan provides coverage "for licensed ambulance service to or from the nearest hospital where the needed medical care and treatment can be provided." (Summary Description Plan p. 20.)

21. The plan provides coverage for "Emergency Services," which are required to treat a "sudden, unexpected onset of a bodily injury or serious sickness which could reasonably be expected by a prudent layperson to result in serious medical complications, loss of life or permanent impairment to bodily functions in the absence of immediate medical attention." (Summary Description Plan p. 53.)

22. Additionally, the plan provides for "Urgent Care Services," which are required "medical, surgical, hospital or related health care services and testing which are not Emergency Services, but which are determined by CIGNA, in accordance with generally accepted medical standards, to have been necessary to treat a condition requiring prompt medical attention." (Summary Description Plan p. 58.)

23. Under the terms of the plan "if [you are] unable to locate an In-Network provider . . . benefits for those services will be covered at the In-Network benefit level."

24. While Mr. Hannagan underwent surgeries at Fletcher Allen, his wife, Rosiley Hannagan, with the help of physicians and Julie Jacob, his case manager at Fletcher Allen, searched for the appropriate rehabilitation facility for Mr. Hannagan when he was ready for discharge from Fletcher Allen. They determined that Kessler Institute for Rehabilitation in West Orange, New Jersey ("Kessler") was the best place for Plaintiff.

25. Kessler is one of the top facilities in the United States for spinal cord rehabilitation. It is one of only 14 members of the national Spinal Cord Injury Model Systems Program. Mr. Hannagan's physicians determined Kessler was the most appropriate facility to handle Mr.

Hannagan's comprehensive, complex interdisciplinary needs, related to paralysis including breathing issues, pain management, blood pressure issues and pressure ulcers. Kessler is one of the few facilities that accept ventilator dependent patients, which Mr. Hannagan was at the time. It was the closest medically appropriate facility to Fletcher Allen.

26. Kessler was also the closest appropriate facility to the Hannagan's home in New York City, which means Mr. Hannagan would have the support of family and friends, including his ten year old daughter. Kessler also has a program to train family members in the future care of patients and it was imperative that Mr. Hannagan's wife and child have access to this training.

27. On March 21, 2013, Mr. Hannagan was advised by medical staff that he was ready for discharge and that he should be transferred to Kessler immediately. It was imperative Mr. Hannagan be transferred as quickly as possible. With his medical condition worsening, delay was not an option.

28. On March 22, 2013, Ms. Jacob, Mr. Hannagan's hospital case manager, contacted Heidi Dodge, the case manager for Mr. Hannagan at CIGNA, regarding the discharge plan for Mr. Hannagan.

29. During phone conversations that day, Ms. Jacob explained that Fletcher Allen had determined that Kessler was the closest appropriate facility for Mr. Hannagan's rehabilitation.

30. Ms. Dodge, the CIGNA's representative, advised that she would be consulting with the medical reviewers at CIGNA to determine if the stay at Kessler could be approved.

31. It was necessary for Mr. Hannagan to take an air ambulance to Kessler, as traveling in an ambulance by ground would have been excruciating and medically inappropriate given his physical condition. In fact, Mr. Hanngan's physician would not authorize his discharge unless Mr. Hannagan was transferred by air ambulance.

32. On March 25, 2013, a CIGNA representative telephoned Ms. Hannagan to inform her that air ambulance transfer was approved. However, a few minutes later, the same representative telephoned Ms. Hannagan and rescinded that statement.

33. On March 25, 2013 CIGNA's representative, telephoned Ms. Jacob and stated that the air ambulance to Kessler would not be covered, as CIGNA had determined that while Kessler could be approved, it was not the closest appropriate facility, and that a rehabilitation center near Fletcher Allen in Burlington, Vermont would be adequate for Mr. Hannagan's needs.

34. Accordingly, CIGNA did not provide Ms. Jacob or the Hannagans with the names of any air ambulances or advise the Hannagans further as to what air ambulance company to use.

35. There are no rehabilitation centers in Burlington, Vermont that accept ventilator dependent spinal cord patients.

36. Due to time constraints by the immediate need for proper rehabilitation, the Hannagans booked air ambulance travel for March 26, 2013, hoping that CIGNA would later reconsider their coverage decision.

37. On March 26, 2013, the CIGNA representative called Ms. Jacob to inform her that the decision had been reversed and that CIGNA would cover the air ambulance travel to Kessler

38. However, later that same morning, Ms. Dodge called Ms. Jacob again and left a message that the prior approval was an error and that CIGNA would now not cover the air ambulance, as air ambulance was "not a service covered under their plan."

39. On March 26, 2013, unable to wait, Mr. Hannagan was moved by air ambulance on an emergency basis to Kessler, and paid $9,640 for the service. The cost of a ground ambulance would have been $9,704, so not appreciably different.

40. Ms. Hannagan stayed with her husband at Kessler for the first few days. When she returned to her residence in New York City, she found two letters from CIGNA denying coverage for the air ambulance service. The first letter of denial, dated March 25, 2013 explained that the requested coverage was denied due to "lack of medical necessity." The second letter, dated March 26, 2013, stated that the requested coverage was denied because "out-of-network air ambulance is excluded from coverage."

41. The Hannagans were initially overwhelmed by the dramatic change in circumstances following the accident. However, they did file a formal appeal of CIGNA's decision on March 21, 2014, which was timely under the Plaintiff's plan. On appeal, Mr. Hannagan argued the denial of services for lack of medical necessity was made in error.

42. Mr. Hannagan also argued on appeal that the out-of-network air ambulance denial was made in error because the policy does cover out-of-network ambulance services as long as there is prior approval. Mr. Hannagan argued prior approval should have been granted given that his condition made the services medically necessary. Furthermore, Mr. Hannagan argued that the way CIGNA handled the Hannagan's request for authorization with conflicting appeals and denials for varying reasons left the Hannagans no choice but to find an air ambulance service themselves to transport the plaintiff.

43. By letter dated April 18, 2014, CIGNA denied the appeal on the grounds that per Mr. Hannagan's policy, "out-of-network air ambulance service is excluded from coverage." The decision does not mention medical necessity.

44. Because of CIGNA's botched handling of this claim, the Hannagans were never provided a list of In-Network air ambulance services, and were improperly denied coverage for necessary services.

45. The Plaintiff was harmed by the incorrect information provided to him by CIGNA, on which he relied to his detriment by not using an air ambulance that CIGNA would have covered.

46. The review by CIGNA of the denied claim did not consider all the relevant factors herein.

## VI. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF: AGAINST ALL DEFENDANTS FOR BREACH OF PLAN PROVISIONS FOR BENEFITS IN VIOLATION OF 29 U.S.C. §1132(A)(1)(B)

47. ERISA requires payment of benefits due to Plaintiff under the terms of his healthcare benefit plan.

48. The plan requires coverage for ambulance service if it is to the nearest appropriate hospital where the medical care and treatment is provided. Kessler was the nearest appropriate facility for Plaintiff's medical care and treatment. Defendants have violated the terms of the plan by not providing air ambulance services for Plaintiff.

49. The plan requires coverage for "emergency services" if it is to treat a serious sickness which could reasonably result in serious medical complications absent immediate medical attention. Plaintiff had a serious deteriorating condition and his condition could have reasonably resulted in medical complications - so he needed immediate medical attention. Fletcher Allen Hospital could no longer provide the necessary care for Plaintiff. It was imperative he be transferred or his medical condition would have worsened. Defendants have violated the terms of the plan by not providing emergency air ambulance services for Plaintiff.

50. The plan requires coverage for "urgent care services" if it is necessary to treat a condition requiring prompt medical attention. Fletcher Allen Hospital could no longer provide the care necessary. It was imperative Plaintiff be transferred or his medical condition would have

worsened. Defendants have violated the terms of the plan by not providing urgent care air ambulance services for Plaintiff.

51. By not providing the aforementioned services required by the terms of the plan, Defendants violated ERISA.

## SECOND CLAIM FOR RELIEF: AGAINST DEFENDANT FOR BREACH OF FIDUCIARY DUTY IN VIOLATION OF 29 U.S.C. §1132(A)(3)

52. CIGNA is an ERISA fiduciary for the ERISA health plan at issue. As such, CIGNA owes the Plaintiff the duty of care and loyalty, and it must apply its plan provisions in good faith.

53. CIGNA breached its fiduciary duty where communications from a fiduciary contained affirmative misrepresentations of fact concerning the plan. CIGNA also breached its fiduciary duty to deal fairly with the Plan's beneficiaries, to wit, by providing confusing and misleading grounds to deny a service that should have been covered. On March 26, 2013, CIGNA affirmatively misrepresented facts to the Plaintiff that CIGNA would not cover air ambulance service, as it was allegedly not covered under the plan. On April 18, 2014, CIGNA denied Plaintiff, on appeal, for air ambulance service for a completely different reason, namely, the ambulance service was out-of-network. Prior to the alleged out-of-network denial, CIGNA never provided Plaintiff with a list of in-network ambulance services.

54. CIGNA breached its fiduciary obligations to Plaintiff by failing to discharge its duties with the care, skill, prudence and diligence of a prudent person in a similar situation. 29 U.S.C. §1104(a)(1)(B). As a result, Plaintiff was never given an opportunity to go in-network nor able to obtain authorization for an out-of-network provider because CIGNA said his ambulance services were not covered under the plan.

## THIRD CLAIM FOR RELIEF: AGAINST PLAN FOR FAILURE TO PROVIDE ADEQUATE NOTICE OF DENIED CLAIMS IN VIOLATION OF §1133(1)

55. Under ERISA, employee benefit plans are required to provide Plaintiff with certain protections, including adequate notice setting forth specific reasons for denial of claims, written in a manner calculated to be understood by the participant. 29 U.S.C. § 1133(1).

56. Although the plan was obligated to do so, it failed to provide adequate notice to the Plaintiff, mishandled benefits claims through misleading statements, and provided inconsistent reasons for denying benefits.

57. On March 26, 2013, CIGNA verbally denied air ambulance services because such services were allegedly not covered under the plan. Then an out-of-network denial and a medical necessity denial came only after the trip had been completed. If the ambulance service Plaintiff sought was out-of-network, then he did not have an opportunity to access an in-network provider or obtain authorization for an out-of-network provider because of CIGNA's misleading statements to Plaintiff on March 26, 2013.

58. The Plan, through CIGNA as its administrator, did not adequately specify the reasons for denial but instead only provided boilerplate language and did not consider nor explain whether the care was within the out-of-network provisions. Furthermore, CIGNA misled Plaintiff by providing inconsistent reasons for denials.

59. When the plan deprives its members of adequate notice or proper compliance with ERISA claims procedure regulations, it violates 29 U.S.C. § 1132(a)(3).

## FOURTH CLAIM FOR RELIEF: AGAINST PLAN FOR FAILURE OF A REASONABLE OPPORTUNITY FOR FULL AND FAIR REVIEW OF DENIED CLAIMS IN VIOLATION OF §1133(2)

60. Under ERISA, employee health benefit plans are required to provide Plaintiff with certain protections, including a reasonable opportunity for a full and fair review of all claims by the appropriate named fiduciary of the decision denying the claim, in this instance CIGNA. 29 U.S.C. § 1133(2).

61. Although the plan was obligated to do so, it failed to provide a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 by mishandling benefit claims through nondisclosure, by misleading statements, and by untimely responses. Through CIGNA, its fiduciary, the plan failed to accurately communicate to the client the reason it denied the payment for the Plaintiff's air ambulance service.

62. The review was not "full and fair" because the notices to Plaintiffs were confusing and incorrect, and because on review the plan failed to consider all the relevant circumstances.

63. By depriving its members of "full and fair review" or proper compliance with ERISA claims procedure regulations, the plan violated 29 U.S.C. § 1132(a)(3).

64. Because of these failures, the case should be reconsidered by CIGNA in a new administrative appeal.

WHEREFORE, Plaintiff prays for a judgment in his favor against CIGNA, and the following relief be awarded to Plaintiff;

1. Damages in the amount to be determined at trial, to be no less than $9,640.00;

2. Alternately, a judgment and order directing Defendants to reevaluate the claim under the correct legal standards, and to consider all the facts of the Plaintiff's situation;

3. Costs and disbursements of this action and reasonable attorneys' fees in accordance with 29 U.S.C. §1132(g)(1);

4. Such other relief the court deems equitable and just.

Dated: March 25, 2015
New York, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　TOBY GOLICK [TG 5365]
　　　　　　　　　　　　　　　　　　　　　　　LESLIE SALZMAN
　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　　　STEPHANIE GORIN
　　　　　　　　　　　　　　　　　　　　　　　DAVID KO
　　　　　　　　　　　　　　　　　　　　　　　LISA RITCHIE
　　　　　　　　　　　　　　　　　　　　　　　*Law Student Interns*
　　　　　　　　　　　　　　　　　　　　　　　CARDOZO BET TZEDEK LEGAL SERVICES
　　　　　　　　　　　　　　　　　　　　　　　55 Fifth Ave., 11th Floor
　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10003
　　　　　　　　　　　　　　　　　　　　　　　212-790-0240